UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

LAURA WONGSING,

                           Plaintiff,

        -against-

WAL-MART REAL ESTATE BUSINESS TRUST,
WAL-MART STORES EAST, LP, WALMART INC.
and WALMART SUPERCENTER STORE #2104,

                           Defendants.
-------------------------------------------------------------X

**OPINION & ORDER**

20 Civ. 06029

Laura Wongsing ("Plaintiff") commenced this action against Wal-Mart[1] Real Estate

Business Trust, Wal-Mart Stores East LP, Wal-Mart Inc., and Wal-Mart Supercenter Store #2104

("Defendants") to recover for personal injuries allegedly sustained as a result of a fall at Wal-

Mart Supercenter Store #2104 (the "Wal-Mart Store") in Newburgh, New York on August 27,

2019. (Docket No. 4-1).  Plaintiff filed her complaint on March 16, 2020 (the "Complaint"), in

the Supreme Court of the State of New York, County of Orange. (*Id.*).  On August 3, 2020,

Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

(Docket No. 4).  Before the Court is Defendants' motion for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure (the "Motion").[2] (Docket No. 17; *see also* Docket

Nos. 18, 19).  Plaintiff opposed the Motion on May 24, 2021, (Docket No. 22; *see also* Docket

Nos. 20, 21), and Defendants replied on June 15, 2021, (Docket No. 25).  For the reasons that

follow, Defendants' Motion is denied.

---

[1] The parties' papers contain inconsistent spellings of the word "Wal-Mart." (*E.g.*, Docket Nos. 4-1 ¶¶ 2-69; 18 at 1).  For ease of reference and consistency, the Court will use the spelling "Wal-Mart."

[2] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Docket No. 12).

## I. BACKGROUND

The following facts are taken from Defendants' Statement of Material Facts on Motion for Summary Judgment submitted pursuant to Local Rule 56.1 of the United States District Courts of the Southern and Eastern Districts of New York, ("Def. 56.1"), (Docket No. 18), Plaintiff's Response to Defendants' Rule 56.1 Statement, ("Pl. 56.1"), (Docket No. 20), the parties' exhibits,[3] and the documents submitted by the parties in support of their contentions. The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quoting *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir. 2011)) (internal quotations omitted).  Any disputes of material fact are noted.

On August 27, 2019, Plaintiff visited the Wal-Mart Store with her twelve-year-old son to purchase an action figure. (Def. 56.1 ¶¶ 1-2; Pl. 56.1 ¶¶ 1-3; Docket Nos. 17-4 at 25:13-26:11;[4] 21-1 ¶¶ 4-5, 7).  Plaintiff parked her car near the store entrance, a few spaces away from a set of shopping cart corrals between the parking lot and the main doors. (Docket Nos. 17-4 at 27:3-5; 21-1 ¶¶ 4, 7).  Plaintiff and her son entered the store shortly after 6:00 p.m., made the purchase, and exited at approximately 6:30 p.m.[5] (Docket Nos. 17-4 at 25:4-7, 26:13-16; 21-1 ¶¶ 7-8).

After Plaintiff and her son exited the store, they walked towards her car through a several-foot-wide area of the parking lot that was painted with yellow lines, across from the main doors and a roadway. (Docket No. 21-1 ¶ 6; *see also* Docket No. 17-4 at 32:14-18).  The painted

---

[3] Whereas the Court need only consider the cited materials in a Rule 56.1 statement, the Court may also rely on evidence in the record even if uncited. *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014); Fed. R. Civ. P. 56(c)(3).

[4] All page number citations to briefs refer to the page number assigned upon electronic filing.

[5] At her deposition, Plaintiff testified that the weather was "probably" warm and sunny that day. (Docket No. 17-4 at 25:8-12).

area was "adjacent" to the shopping cart corrals. (Docket No. 21-1 ¶ 6).  As Plaintiff traversed

the yellow lines, her left foot struck a raised portion of asphalt or "divot" and she tripped and

fell. (Def 56.1 ¶ 3; Pl. 56.1 ¶ 3; Docket No. 17-4 at 32:7-25; 21-1 ¶ 9).

      Surveillance footage of the parking lot in front of the Wal-Mart store on the date of the

accident depicts Plaintiff falling at 6:33:38 p.m. (*See* Docket Nos. 17-1 ¶ 6; 17-4 at 96:19-97:8).

Plaintiff testified that during the walk back to the car, she was wearing a pocketbook on her

shoulder and carrying the receipt from her purchase. (Docket No. 17-4 at 44:11-45:6-13, 95:20-

97:8).  Just before her fall, she "momentarily" "glanc[ed] down at the receipt and . . . ma[de] sure

that" she and her son "were okay in the parking lot" so that they could "g[e]t to the car safely."

(*Id.* at 43:25-44:23, 95:25-97:8).  Plaintiff further explained that her foot was caught on the

asphalt's uneven surface, which formed a raised "box" surrounding the yellow lines.[6] (*See*

Docket No. 17-4 at 32:7-25, 86:22-89:6; *see also* Def 56.1 ¶ 5; Pl. 56.1 ¶ 5).  Plaintiff had

understood the yellow lines as "advising . . . [that there was] no parking" where they were

painted. (*See* Docket No. 17-4 at 36:19-37:6).  Moreover, the "area . . . seemed like it was okay,

it had yellow lines on it," and "there was nothing to indicate that there was a problem with the

parking lot." (*Id.* at 32:16-21).  Plaintiff landed on both knees, her hands and her right shoulder.

(Def. 56.1 ¶ 1; Pl. 56.1 ¶ 1; Docket No. 17-4 at 33:20-34:9).  After the fall, three bystanders

approached Plaintiff to ensure that she was alright. (Docket No. 17-4 at 34:13-35:9).  Then,

---

[6] When shown a photograph of the area of her fall, Plaintiff identified the specific location where her foot got caught as a "divot" "where it looks like it is raised" in the "upper right-hand corner" of the image. (Docket Nos. 17-4 at 86:22-88:12; 17-5).  Absent any evidence to the contrary, the Court concludes that this and any other photographs or measurements of that area taken on or after the date of the incident and relied on by the parties are accurate. *Cf. Pokigo v. Target Corp.*, 13-CV-722(LJV)(HKS), 2017 WL 1078758, at *4 (W.D.N.Y. Mar. 20, 2017).

following a short rest in her car, Plaintiff and her son returned to the store to report the incident.[7] (*Id.* at 34:13-35:19; Docket No. 21-1 ¶ 11).

Plaintiff submitted an affidavit corroborating the above deposition testimony and adding that before she fell, she "was not in any hurry" and "was looking straight ahead" to assure her son's safety. (Docket No. 21-1 ¶¶ 4-8).  Moreover, "[a]s [she] looked down, the parking area looked like it had 'cut marks' or saw marks in the asphalt" that formed a "box" with sunken asphalt inside of it. (*See id.* ¶ 8).  The affidavit further asserts that this area was "confusing because the yellow painted lines" extended to "the sunken area" yet "were still intact," leading observers to "believe the area [wa]s not sunken." (*See id.*).  Thus, "the momentary distractions and the painted lines lead [sic] [Plaintiff] to the divot." (*Id.* ¶ 9; *see also id.* ¶ 13).

William Mogg ("Mogg"), the assistant store manager of the Wal-Mart Store, took photographs of the area of Plaintiff's fall and completed an incident report.[8] (Docket No. 21-3 at 7:20-8:4, 18:22-25:6).  He testified that he had no prior knowledge of the condition because he typically parked on the other "side of the [store] building," so the date of the incident was "the first time [he] had been to that area." (*Id.* at 26:3-8).  He conceded that "it is not really noticeable to the eye," but "[i]f you trip over it you will notice it." (*Id.* at 25:19-25).  Mogg also testified that he did not know "if there was some construction or some paving that was done" in the area of Plaintiff's fall prior to the incident, and that he "wouldn't know who [would have been] involved" in that process. (*Id.* at 35:19-36:7).  Defendants assert that they are unaware of any prior complaints and/or accidents involving the area of Plaintiff's fall before the incident. (Docket No. 25-2 at 1; *see also* Docket No. 21-3 at 32:6-9).

---

[7] The incident report was not submitted for the Court's review.

[8] *See supra* n.7.

Plaintiff's expert, Kenneth J. Wooley ("Wooley"), examined the accident site on March 23, 2021. (Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6). Although Plaintiff was unable to identify the specific height of the raised asphalt where she fell, (Def. 56.1 ¶ 4; Pl. 56.6 ¶ 4; Docket No. 17-4 at 42:17-43:6), Wooley submitted an affidavit and report stating that she fell at its northern side, "closest to the store, which measured 7/8 of an inch,[9] (Docket Nos. 17-6 at 7; 21-2 ¶ 5). Wooley opined that the area "ha[d] been cut and patched at a previous time," and had "settled in several spots" due to disrepair, causing an "abrupt" and "sharp" "lip or elevation change" that constitutes a tripping hazard. (Docket No. 17-6 at 7; *see also* Docket No. 21-2 ¶¶ 4, 6).[10] This elevation change "would have caused the defect to catch or snare [Plaintiff's] left toe and stop her left foot from moving forward," propelling her body forward and leading to her fall. (Docket No. 21-2 ¶ 6; *see also id.* ¶ 9). He further opined that the area where Plaintiff fell is "difficult to discern," compounding the tripping hazard, because "[t]he settled" and "non-settled" portions are the same color "and the striping [does] not change[] direction." (Docket No. 17-6 at 8; *see also* Docket No. 21-2 ¶ 8). Moreover, "[t]he yellow stripes would attract pedestrians . . . as being safe from vehicular traffic," as they "were next to a shopping cart corral" and "directly in front of the large entrance to the store or the prime parking spaces."[11] (Docket No. 21-2 ¶ 8).

---

[9] Wooley "estimate[d] that th[is] depth . . . would be the height of the toe of Plaintiff's 'flat women's shoe'." (Docket No. 21-2 ¶ 5). He also measured a 9/16 of an inch deviation change at the "box's" southern side. (Docket No. 17-6 at 7).

[10] In his affidavit, Wooley explained that asphalt "[t]ypically" "develop[s]" cracks "as time passes," and as more time passes, the cracks multiply and intersect. (Docket No. 21-2 ¶ 4). This process is called "alligatoring." (*Id.*). "Potholes" form when the areas surrounding intersecting cracks "ris[e] and fall[]." (*See id.*). Here, according to Wooley, "Walmart made saw cuts . . . and connected [them] to form a 'box' of an odd shape," which caused "water . . . [to] seep into the cracks and deteriorate or settle the ground underneath the 'box'" because "[t]he asphalt inside the box was no longer supported [by] the surrounding asphalt." (*See id.*). As a result, "the asphalt inside the 'box' became subject to uneven sinking," and this effect "accelerated deterioration." (*See id.*).

[11] Wooley described the specific location of the area where Plaintiff fell as "at the beginning of row 7 in the parking lot adjacent to the building" of the Wal-Mart Store, with parking spaces on one side and traffic on the other side. (*See* Docket No. 17-6 at 7).

Wooley concluded that Defendants "knew or should have known" of this "hazardous tripping condition" because (1) the "box's" lines were "machine-straight," and thus, man-made; and (2) photographs of the area from the date of the accident depicted a several-inch-tall weed as well as gravel, grit and dirt in the "box," indicating that "the sinking of the asphalt had been in existence for . . . at least . . . weeks." (*See id.* ¶ 7).  Wooley also concluded that the hazardous nature of the condition was foreseeable because it "had foreseeably heavy pedestrian traffic" and "neighboring areas" in the parking lot also contained large, intersecting cracks. (*See id.* ¶ 9).  In addition, the 7/8 of an inch height change and disrepair of the area where Plaintiff fell violated the 2015 International Property Maintenance Code of New York, which only permits a 1/4 of an inch height change or 1/2 of an inch height change for bevels or slopes. (Docket No. 17-6 at 8).

## II.  LEGAL STANDARDS

### A.  Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is material if it might affect the outcome of the suit under the governing law. *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).  That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323).  If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id.*  "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (quoting *Celotex*, 477 U.S. at 324; citing *Anderson*, 477 U.S. at 249–50), and  "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**B.  Burden of Proof on Summary Judgment**

New York law governs the substantive slip-and-fall claim.[12]  However, federal law applies to procedural aspects of the claim. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  Because the moving party's burden of proof on a summary judgment motion is procedural, it is therefore

---

[12] Because jurisdiction over this matter is based upon the parties' diversity of citizenship and the alleged acts occurred in New York, New York law governs the substantive claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).  This point is not in dispute. (*Compare* Docket No. 19 at 6, *with* Docket No. 22 at 12).

governed by federal law. *Tingling v. Great Atl. & Pac. Tea Co.*, No. 02 Civ. 4196 (NRB), 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) ("We find that the issue of what burden a movant for summary judgment bears when the ultimate burden of proof lies with the non-movant is procedural rather than substantive, under the distinction created by *Erie R. Co. v. Tompkins*, 304 U.S. 64 . . . (1938) and its progeny, and accordingly is subject to federal rather than state law.") (citing *Celotex*, 477 U.S. 317); *see also Hughes v. United States*, No. 12 Civ. 5109(CM), 2014 WL 929837, at *4 (S.D.N.Y. Mar. 7, 2014) (applying the federal burden of proof standard on a motion for summary judgment, explaining that "[e]ven though the substantive claims are governed under New York law, the procedural issues are determined under the federal standard."); *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 396 (E.D.N.Y. 2010) ("[T]he respective burdens that the parties bear in a summary judgment motion are procedural rather than substantive, and are thus subject to federal rather than state law.").

The federal burden of proof on a motion for summary judgment differs from the corresponding standard under New York law in a slip-and-fall action. *See, e.g.*, *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 12–13 (2d Cir. 2008) (summary order) (hereinafter "*Tenay II*"); *Vasquez v. United States*, 14-CV-1510 (DF), 2016 WL 315879, at *4–5 (S.D.N.Y. Jan. 15, 2016). "Under New York law, '[a] defendant who moves for summary judgment in a [sl]ip-and-fall case has the initial burden of making a *prima facie* showing that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it.'" *Vasquez*, 2016 WL 315879, at *4 (quoting *Levine v. Amverserve Ass'n, Inc.*, 938 N.Y.S.2d 593, 593 (2d Dep't 2012)). Conversely, under federal law, the moving party "need not make any affirmative *prima facie* showing on [a] motion for summary judgment, and may discharge its burden of proof merely 'by

pointing to an absence of evidence to support an essential element of [Plaintiff's] claim.'" *Id.* at *5 (quoting *Zeak v. United States*, No. 11 Civ. 4253(KPF), 2014 WL 5324319, at *8 (S.D.N.Y. Oct. 20, 2014)); *see also Feis v. United States*, 394 F. App'x 797, 798–99 (2d Cir. 2010) (summary order) (applying New York substantive law and federal procedural law, finding that "contrary to plaintiff's assertions, defendant was not required to affirmatively disprove each element of plaintiff's [slip-and-fall] claim").[13]   Therefore, because the burden of proof on a motion for summary judgment is procedural and federal law applies, Defendants may meet their burden by "'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case,'" but need not "raise a *prima facie* case." *Hughes*, 2014 WL 929837, at *4 (quoting *Celotex*, 477 U.S. at 325).  If Defendants meet that burden, the burden then shifts to Plaintiff to present evidence on each element of the claim and demonstrate that a genuine issue of material fact exists for trial. *See Celotex*, 477 U.S. at 322–24; *Holcomb*, 521 F.3d at 137.

## III. DISCUSSION

Under New York law, a plaintiff asserting a negligence claim must demonstrate "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 499 N.Y.S.2d 392, 392 (1985)) (internal

---

[13] *See also Tenay II*, 281 F. App'x at 12–13 (affirming district court's grant of summary judgment and noting that, although under New York law the moving party bears the initial burden of proof, under federal law "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions," and that therefore, where the non-movant bears the burden of proof at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.") (quotation marks and citations omitted); *Cruz v. Target Corp.*, No. 13 Civ. 4662(NRB), 2014 WL 7177908, at *3 (S.D.N.Y. Dec. 17, 2014) ("In federal court, it is the plaintiff who, as the nonmoving party, bears the burden of showing a genuine dispute of material fact, even though a New York state court would require the *defendant* to produce affirmative evidence on the key issue of whether the defendant had adequate notice of the spill.") (emphasis in original).

quotations omitted).  In the context of premises liability and slip-and-fall cases, "the plaintiff

must demonstrate that the landowner created the condition that caused the injury, or that the

landowner had actual or constructive notice of the condition." *Gonzalez v. Wal-Mart Stores, Inc.*,

299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004); *see also Decker v. Middletown Walmart Supercenter

Store #1959 et al.*, 15 Civ. 2886 (JCM), 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017)

("[T]he plaintiff must demonstrate that the defendant either created the defective condition, or

had actual or constructive notice thereof for such a period of time that, in the exercise of

reasonable care, it should have corrected it.").  Under New York law, Plaintiff bears the burden

of proof on the elements of her premises liability claim at trial. *See Tenay II*, 281 F. App'x at 13.

　　Although the issue of whether a condition is sufficiently dangerous or defective to trigger

liability is generally reserved for the factfinder, New York courts recognize an exception to this

rule where as a matter of law, "a defendant 'may not be cast in damages for negligent

maintenance by reason of trivial defects on a walkway . . . as a consequence of which a

pedestrian might merely stumble, stub his toes, or trip over a raised projection.'" *See Hutchinson

v. Sheridan Hill House Corp.*, 19 N.Y.S.3d 802, 809 (2015) (quoting *Guerrieri v. Summa*, 598

N.Y.S.2d 4, 5 (2d Dep't 1993)).  This exception, called the "trivial defect doctrine," provides that

a condition may be simply too "insignificant" for a court to find a defendant negligent for failing

to fix it, even if the condition caused the plaintiff's fall. *See Coyle v. United States*, 954 F.3d 146,

149 (2d Cir. 2020) (citing *Hutchinson*, 19 N.Y.S.3d at 809).  The court – not the jury – is

responsible for "determin[ing] whether an alleged condition meets this triviality standard by

reviewing 'all the specific facts and circumstances of the case.'" *Id.* (quoting *Hutchinson*, 19

N.Y.S.3d at 809).  A defendant seeking dismissal based on the trivial defect doctrine "must make

a prima facie showing that the defect is, under the circumstances, physically insignificant and

that the characteristics of the defect or the surrounding circumstances do not increase the risks it poses." *See Hutchinson*, 19 N.Y.S.3d at 810.  If the defendant does so, the burden shifts to the plaintiff to establish an issue of material fact. *See id.*

Here, Defendants contend that any defect in the parking lot where Plaintiff fell is too trivial to trigger liability as a matter of law, "irrespective" of whether they had notice of it. (*See* Docket No. 25 at 4; *see also* Docket No. 19 at 6-8).  Plaintiff argues that issues of fact exist as to (1) whether the alleged defect is trivial or constitutes a trap or snare; and (2) whether Defendants had constructive notice of it.[14] (Docket No. 22 at 11-23).

## A.  Trivial Defect Doctrine

Defendants argue that the alleged defect is trivial because (1) the height differential of the area where Plaintiff fell was no greater than 7/8 of an inch high; and (2) there is no evidence of any characteristics of the area or surrounding circumstances that would increase its risks. (Docket Nos. 19 at 6-8; 25 at 5-7).  Plaintiff responds that (1) the 7/8 of an inch height differential is not necessarily trivial or insignificant as a matter of law; and (2) numerous characteristics of the parking lot and other circumstances increased the defect's risks, including (a) the sharp edge of the height differential; (b) the defect's location in the pedestrian zone of a parking lot between the shopping cart corrals, parking spaces and store entrance; (c) the fact that

---

[14] To the extent Plaintiff also contends that there are issues of material fact as to whether Defendants created the alleged defect by constructing "saw cuts" on the asphalt where Plaintiff fell, (*see* Docket No. 22 at 10; *see also* Docket Nos. 21 ¶ 5; 21-2 ¶¶ 4, 7), the Court need not address this argument because Defendants' motion must be denied on other grounds. *See infra* Sections III.A, C.  In any event, this argument is rejected because it is too speculative. *See Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335 (JMA), 2009 WL 1955555, at *6 (E.D.N.Y. July 6, 2009) ("A plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard.").  The mere fact that a defendant "exclusively maintained" an area containing an alleged defect "does not mean that [it] created the dangerous condition." *See Zilgme v. United States*, No. 15-CV-130-A, 2017 WL 9516810, at *11 (W.D.N.Y. May 24, 2017), *report and recommendation adopted as modified*, No. 15-CV-130-A, 2017 WL 4784315 (W.D.N.Y. Oct. 24, 2017), *aff'd in part, vacated in part on other grounds, remanded*, 744 F. App'x 25 (2d Cir. 2018).  Plaintiff has not presented any evidence showing how the subject asphalt became unlevel, or who specifically made such "saw cuts" or painted the yellow lines that Plaintiff alleges confused her. (*See* Docket No. 22 at 10).

the defect was painted the same color on both sides, "mask[ing]" its change in height and

creating "optical confusion;" (d) the lack of visible cues to warn pedestrians of these dangers;

and (d) Plaintiff's "momentar[y] distract[ion]" by the task of safely guiding her son through the

parking lot while reviewing her receipt. (Docket No. 22 at 8-10, 15-23).  On reply, Defendants

assert that Plaintiff cannot create an issue of fact based on the "optical confusion" argument

because it was not disclosed in her bill of particulars (the "Bill of Particulars") and is grounded

in an affidavit that is "at odds with her prior sworn testimony." (Docket No. 25 at 2-3).  The

Court finds this argument meritless and agrees that there are material issues of fact regarding

whether the parking lot's condition was dangerous or defective.

## 1.  Objection to "Optical Confusion" Argument and Affidavit

As a preliminary matter, the Court will not grant Defendants' request to preclude Plaintiff

from using her "optical confusion" argument or her affidavit. (*See id.*).  The "sham affidavit

rule" provides that "a party may not create an issue of fact by submitting an affidavit in

opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's

previous deposition testimony."[15] *See Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir.

2014) (summary order) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d

Cir. 1996)) (internal quotations omitted).  However, this rule is inapplicable if the subject

"deposition testimony and later affidavit are not actually contradictory." *See Palazzo ex rel.

Delmage*, 232 F.3d 38, 43 (2d Cir. 2000); *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d

Cir.1996) (noting that when "subsequent sworn testimony amplifies or explains, but does not

---

[15] The rule seeks to prohibit "a party who has been examined at length on deposition [from] . . . rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony" because "this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *See Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969).

merely contradict . . . [the subject] prior testimony," a party may show that a triable issue of fact exists).

That is the case here.  According to Defendants, Plaintiff testified that "she did not see the defect that caused her to trip because she was looking down at her . . . receipt" without mentioning any "optical confusion" by the yellow lines, yet her affidavit asserts, for the first time, that she was also "looking down at the parking lot" when she fell and that the yellow lines confused her. (Docket No. 25 at 2).  However, Plaintiff's testimony that she momentarily reviewed her receipt does not foreclose the possibility that she also looked down at the ground. (*See* Docket No. 17-4 at 95:25-97:8).  Moreover, Plaintiff specifically testified that she saw the yellow lines and misinterpreted their meaning in that she thought the yellow lines "advis[ed] . . . [that there was] no parking," and the lines did not properly alert her to the asphalt "box" that caused her fall. (*See* Docket No. 17-4 at 32:7-21, 35:20-37:6, 43:25-44:23).  This indicates that she did look down. (*See id.* at 32:7-21, 35:20-37:6).  Thus, her affidavit clarifies and elaborates on factual details provided in her earlier testimony. *See Rule*, 85 F.3d at 1011; *see also Langman Fabrics, a div. of Blocks Fashion Fabrics, Inc. v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir.), *amended*, 169 F.3d 782 (2d Cir. 1998).  It does not violate the "sham affidavit" rule.

Defendants also argue that Plaintiff should not be permitted to use her "optical confusion" argument on summary judgment because it was not explicitly disclosed in her Bill of Particulars before this action was removed to federal court. (Docket No. 25 at 2-3).  However, that does not preclude Plaintiff from asserting it at this juncture because in this diversity action, Defendants are not entitled to a bill a particulars under the Federal Rules of Civil Procedure. *See Middlesex Mut. Assurance Co. v. Britton*, 16-CV-814A, 2018 WL 746982, at *3 (W.D.N.Y. Feb. 7, 2018); *see also Hanna*, 380 U.S. at 465.  Bills of particulars were eliminated from the Federal

Rules of Civil Procedure in 1948 by amendment to Rule 12(e). *See Middlesex Mut. Assurance*, 2018 WL 746982, at \*3; Fed. R. Civ. P. 12(e) advisory committee's note to 1946 amendment. Thus, Rule 8(a)(2) governs the sufficiency of Plaintiff's pleadings with respect to her optical confusion argument. *See* Fed. R. Civ. P. 8(a)(2).

Rule 8(a)(2) requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*  The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."). Such notice is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)) (internal quotations omitted).  It does not require a plaintiff to "set out *in detail* the facts upon which he bases his claim," or allege legal theories, as long as the complaint contains a factual "showing" of "entitlement to relief." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (alteration in original) (quoting *Conley*, 355 U.S. at 47); *see also id.* at 77.

Consequently, any argument that Plaintiff's failure to assert her "optical confusion" argument in her pleadings violates Rule 8(a)(2) fails. (*See* Docket No. 25 at 2-3).  The Complaint alleges that Defendants are liable for "permitting dangerous . . . conditions to exist on" the Wal-Mart Store parking lot, which caused her fall. (*See* Docket No. 4-1 ¶¶ 35, 71-73).  The Bill of Particulars further alleges that "the uneven [and unlevel] pavement in the parking lot" constituted

a "dangerous condition" which caused her fall because Defendants improperly maintained the lot, failed to warn of its danger and failed to "barricade access" thereto. (*See* Docket No. 25-1 ¶¶ 6, 17). Together,[16] these assertions leave ample room for the theory that the "uneven" and "unlevel" parking lot was "danger[ous]" because the extent of its danger was difficult to detect. (*See* Docket Nos. 4-1 ¶¶ 35, 71-73; 25-1 ¶¶ 6, 17). Therefore, Defendants were "on sufficient notice to conduct discovery to find out any further details" supporting Plaintiff's claims.[17] *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220 (AJP), 1998 WL 665138, at *5 (S.D.N.Y. Sept. 25, 1998). Accordingly, Plaintiff may assert her "optical confusion" argument at this stage. *See Swierkiewicz*, 534 U.S. at 512.

## 2. Trivial Defect

Plaintiff has presented sufficient evidence to create a triable issue of fact regarding whether the asphalt where she fell is trivial. To determine whether an alleged defect on a walkway is trivial, "the court must consider 'the peculiar facts and circumstances of each case, including the width, depth, elevation, irregularity, and appearance of the defect as well as the time, place, and circumstances of the injury.'" *Scott v. United States*, No. 04 Civ. 4107 (MBM), 2006 WL 302337, at *1 (S.D.N.Y. Feb. 9, 2006) (quoting *Tesak v. Marine Midland Bank*, 678 N.Y.S.2d 226, 226 (4th Dep't 1998)). New York courts also "often rely on the judge's

---

[16] *Cf. Emps. Ins. Co. of Wausau v. Harleysville Preferred Ins. Co.*, 726 F. App'x 56, 61 (2d Cir. 2018) (summary order) (considering complaint and bill of particulars together in diversity action when determining sufficiency of pleadings in relation to the duty to defend); *Middlesex Mut. Assurance*, 2018 WL 746982, at *3 ("Technically, a bill of particulars was not a discovery device but an amplification of a pleading.").

[17] Defendants note that they "relie[d] on the allegations made in state court" because "Plaintiff did not respond to [their] interrogatories once the case was removed." (Docket No. 25 at 2 n.1). However, discovery closed on April 2, 2021. (*See* March 12, 2021 Minute Entry). Defendants never moved to compel Plaintiff to respond to their interrogatories, nor did they request an extension of discovery to explore this issue. Moreover, Wooley's report – which was served on March 25, 2021 – expressly stated that the alleged "tripping hazard is difficult to discern" because the "settled" and "non-settled" portions of the asphalt where Plaintiff fell "are visibly similar," such that "[a]t first glance, both surfaces look level." (*See* Docket No. 17-6 at 8). Therefore, the Court rejects any argument that Plaintiff's failure to respond to their interrogatories ultimately prevented Defendants from timely discovering the basis or existence of Plaintiff's "optical confusion" argument.

examination of photographs to determine whether a defect is trivial as a matter of law."
*Czochanski v. Tishman Speyer Properties, Ltd.*, 45 F. App'x 45, 47 (2d Cir. 2002) (summary order); *see, e.g.*, *Nathan v. City of New Rochelle*, 723 N.Y.S.2d 402, 403 (2d Dep't 2001);
*Figueroa v. Haven Plaza Hous. Dev. Fund Co.*, 668 N.Y.S.2d 203, 203–04 (1st Dep't 1998).

"[G]enerally, a height differential of less th[a]n one inch . . . is non-actionable" when there is no evidence of "any other circumstantial factors contributing to the injury." *Scott*, 2006 WL 302337, at *2 (finding height differential of one inch or less between sidewalk segments trivial where "it was not irregular, hidden from view, or otherwise compounded by the time, place, or circumstances of the accident") (collecting cases); *see also Pokigo*, 2017 WL 1078758, at *5; *Nathan*, 723 N.Y.S.2d at 403.  However, "there is no 'minimal dimension test' or per se rule that a defect must be of a certain minimum height or depth in order to be actionable." *Trincere v. County of Suffolk*, 665 N.Y.S.2d 615, 616 (1997).  Indeed, "[e]ven a small difference in height is actionable if the alleged defect has the characteristics of a trap, snare or nuisance." *Pagano v. Rite–Aid Corp.*, 698 N.Y.S.2d 129, 130 (4th Dep't 1999).  "[A] physically small defect [may also be] actionable" when its "surrounding circumstances or intrinsic characteristics make [it] difficult for a pedestrian to see or identify as [a] hazard[] or difficult to traverse safely on foot." *Hutchinson*, 19 N.Y.S.3d at 810.  For example, the New York Court of Appeals has recognized "a jagged edge . . . ; a rough, irregular surface . . . ; the presence of other defects in the vicinity . . . ; poor lighting . . . ; or a location – such as a parking lot, premises entrance/exit, or heavily traveled walkway – where pedestrians are naturally distracted from looking down," as factors that may preclude a finding that such a defect is too trivial to trigger liability. *See id.* at 809–10.  Thus, the applicability of the trivial defect doctrine does not turn on the alleged defect's "size alone." *See id.* at 809.

For these reasons, the Court rejects Defendants' contention that the 7/8 of an inch height differential is enough to render the alleged defect trivial as a matter of law. *See id.* at 809–10; (Docket No. 25 at 5-6).  Moreover, there are numerous factors that support a finding that Plaintiff's fall resulted from one or more defects on the parking lot and other "intrinsic characteristics . . . [which] magnify the danger[] . . . pose[d]" by the area where Plaintiff fell. *See Hutchinson*, 19 N.Y.S.3d at 809; (Docket Nos. 19 at 7-8; 25 at 5-7).   Here, there is no evidence of poor lighting, inclement weather or slippery conditions that would render the area of Plaintiff's fall more dangerous. *See supra* n.5.  Nor is there evidence that anything specific blocked Plaintiff's view of the ground.  However, Plaintiff's expert opined that the "abrupt and sharp" nature of the "saw cut" around unlevel asphalt caused her fall by catching her shoe. (Docket Nos. 17-6 at 7; 21-2 ¶¶ 6, 9).  He further concluded that the vicinity of Plaintiff's fall is replete with other defects, including settled asphalt in "several spots," and "neighboring areas with large cracks and alligatoring" – all of which made the parking lot unsafe. (Docket Nos. 17-6 at 7; 21-2 ¶¶ 6, 9); *see also Hutchinson*, 19 N.Y.S.3d at 809.  Under similar circumstances, New York courts have recognized that a less-than-one-inch height differential on an uneven walking surface is sufficient to raise an issue of fact regarding the existence of a defect when combined with evidence of other dangerous conditions on the surface such as erosion, loose concrete and/or cracks. *See, e.g.*, *Fazio v. Costco Wholesale Corp.*, 924 N.Y.S.2d 381, 383 (1st Dep't 2011); *Baer v. 180 Varick LLC*, No. 158789/2014, 2016 WL 8193622, at *4 (Sup. Ct. N.Y. Cnty. Nov. 14, 2016); *see also Tineo v. Parkchester S. Condo.*, 759 N.Y.S.2d 9, 10 (1st Dep't 2003) (finding issue of fact where expert opined that "patch-repaired walkway surface was destabilizing underfoot because it was wide-cracked, depressed, sunken, and uneven").  The same is true when an uneven walking surface contains abrupt or sharp edges, which can catch a

person's shoe and thus constitute a tripping hazard.[18] *See Abreu v. New York City Hous. Auth.*, 876 N.Y.S.2d 50, 51 (1st Dep't 2009); *Nin v. Bernard*, 683 N.Y.S.2d 237, 238 (1st Dep't 1999).

A jury could also find that the defective nature of the uneven asphalt where Plaintiff fell may have been difficult to detect. *See Hutchinson*, 19 N.Y.S.3d at 810.  "'[F]actors which make the [alleged] defect difficult to detect' require 'an assessment of the hazard in view of the peculiar facts and circumstances' and render summary judgment inappropriate." *Fosmire v. Kohl's Dep't Stores, Inc.*, No. 07-CV-6027, 2009 WL 891798, at *3 (W.D.N.Y. Mar. 31, 2009) (denying summary judgment where "[a] jury could find the particular sloping lip configuration used by [defendant] to guide pedestrians into its store incorporated a difficult to detect tripping hazard for the unwary customer") (quoting *Argenio v. Metro. Transp. Auth.*, 716 N.Y.S.2d 657, 659 (1st Dep't 2000)).  Plaintiff's expert observed that "the color of both asphalts" on each side of the "box" where she fell was the same, and "the area surrounding the box had yellow strip[e]s," "confus[ing] customers as to the existence of the cracks" and leading them to believe the area was "safe from vehicular traffic." (Docket No. 21-2 ¶ 8; *see also* Docket No. 17-6 at 8). He further explained that "[a]t first glance, both surfaces" of the area "look level when in fact a tripping hazard is in the path of travel to the parking lot." (Docket No. 17-6 at 8).  Both Plaintiff and Mogg attested that the "box" is not noticeable, (Docket Nos. 17-4 at 35:20-36:11; 21-3 at 25:19-26:2), and photographs confirm that the sunken asphalt is the same color as the raised asphalt in the "box" where Plaintiff testified she fell, (*see* Docket Nos. 17-4 at 87:7-88:12; 17-5;

---

[18] For this reason, Defendants' reliance on *Estrella-Jones v. United States*, No. 13-CV-5454 (CBA) (LB), 2016 WL 7243540, at *4 (E.D.N.Y. Dec. 14, 2016), *aff'd*, 706 F. App'x 28 (2d Cir. 2017), *as amended* (Dec. 21, 2017), is inappropriate. (*See* Docket No. 19 at 7). Whereas the alleged defect in that case had "no significant depressions" and "sloping sides," *see Estrella-Jones*, 2016 WL 7243540, at *4, there is evidence on record that the unlevel asphalt here was "sharp" and "abrupt," (*see* Docket Nos. 17-6 at 7; 21-2 ¶¶ 6, 9). Moreover, no "circumstances of the accident" in *Estrella-Jones* "ma[d]e[] th[e] gradual depression . . . unreasonably hazardous," *see* 2016 WL 7243540, at *4, and as explained *infra*, Plaintiff has introduced evidence of numerous characteristics of the alleged defect's location that made it difficult to detect, and thus, more dangerous. *See Hutchinson*, 19 N.Y.S.3d at 810.

17-6 at 9-15).  Moreover, in the specific corner of the "box" where Plaintiff tripped, the yellow line continues straight from the sunken asphalt onto the raised asphalt, with no break to indicate a change in level. (*See* Docket Nos. 17-5; 17-4 at 87:7-88:12).  A jury could find that this hidden feature of the asphalt – combined with the other defects in its immediate vicinity – rendered this area of the parking lot more dangerous than it appeared to the average pedestrian. *See Fosmire*, 2009 WL 891798, at *3; *see also Glickman v. City of New York*, 746 N.Y.S.2d 24, 24–25 (1st Dep't 2002) (finding trial necessary due to "factual issues regarding whether the dip, even if trivial, presented a hazard due to factors which made it difficult to detect"); *Salatino v. Angela's Pizza of Catskill, Inc.*, 12-0110, 2015 WL 10733286, at *3 (Sup. Ct. Ulster Cnty. Sept. 2, 2015) (finding summary judgment inappropriate where "reasonable minds could differ as to whether" step with same patterned tile on edge and tread "[wa]s visually confusing and deceptive"); *Ratkewitch v. Simon Prop. Grp., Inc.*, 847/07, 2009 WL 1664147, at *6 (Sup. Ct. Nassau Cnty. May 8, 2009) (finding issues of material fact as to alleged defect's triviality in light of potential "'optical confusion' due to defendants' failure to properly mark . . . or otherwise distinguish the area in any meaningful fashion as exacerbated by the dark asphalt color").

This is especially so in light of the fact that Plaintiff tripped on the asphalt after exiting the Wal-Mart Store and while traversing the parking lot on the way to her car. (Docket No. 17-4 at 32:14-18).  Courts have held that an alleged defect may constitute a hazard or "trap for the unwary" when located close to a business exit, *see Wilson v. Time Warner Cable, Inc.*, 774 N.Y.S.2d 584, 586 (3d Dep't 2004) (quoting *Tesak*, 678 N.Y.S.2d at 227) (internal quotations omitted), "where pedestrians are naturally distracted from looking down at their feet." *See Hutchinson*, 19 N.Y.S.3d at 810; *see also Glickman*, 746 N.Y.S.2d at 24–25.  Heavily traveled public walkways and parking lots pose similar issues of fact because pedestrians must take care

to ensure that they do not bump into others and avoid traffic, and, thus, are not focused solely on the ground. *See, e.g.*, *Davis v. United States*, 17-CV-00400, 2019 WL 203108, at *2 (E.D.N.Y. Jan. 15, 2019) (declining to grant summary judgment where photographs showed that crack in the sidewalk where plaintiff fell "was located just steps from the entrance to the Metropolitan Post Office and directly in front of the mailbox, which [wa]s likely a heavily trafficked area and therefore increase[d] the risk it pose[d] to pedestrians"); *Habecker v. KFC U.S. Properties, Inc.*, 928 F. Supp. 2d 648, 652–56 (E.D.N.Y. 2013) (finding questions of material fact as to trivial nature of one-and-a-half to two inch depression in parking lot near curb where there was evidence that plaintiff did not see it because "he was looking straight ahead"); *Bolloli v. Waldbaum, Inc.*, 896 N.Y.S.2d 400, 401–03 (2d Dep't 2010) (finding evidence insufficient to demonstrate that alleged defect was trivial as a matter of law where plaintiff fell on a pothole in the parking lot of a supermarket on her way to shop for groceries); *Argenio*, 716 N.Y.S.2d at 659 (finding issues of fact regarding whether 1/4 of an inch depression where plaintiff fell was defective where plaintiff testified to "looking straight ahead as she walked" in heavily traveled walkway).[19]

Here, the distance between the unlevel asphalt, the neighboring parking spaces and the roadway as shown in the photographs and surveillance footage corroborates Plaintiff's assertion that her fall occurred when she was "making sure" that she and her son "were okay in the parking lot," and thus, was "looking straight ahead."[20] (Docket Nos. 17-1 ¶ 6; 17-4 at 44:4-10;

---

[19] The foregoing caselaw establishes that Defendants' narrow definition of a "trap" or "snare" as "an enclosure or device designed to catch and hold onto a part of the body" – which derives from an English language dictionary and no legal authority – is not relevant here. (*See* Docket No. 25 at 7); *see also Wilson*, 774 N.Y.S.2d at 586.

[20] Defendants argue that "the most significant circumstance of [Plaintiff's] accident is that she was looking at her register receipt rather than where she was walking." (Docket No. 25 at 7). Although Plaintiff's review of the receipt may support a finding of comparative fault, that conclusion "does not preclude a finding of liability against" Defendants. *See Habecker*, 928 F. Supp. 2d at 655–56 (quoting *Cupo v. Karfunkel*, 767 N.Y.S.2d 40, 40 (2d. Dep't 2003)) (internal quotations omitted); *see also Ratkewitch*, 2009 WL 1664147, at *3. Moreover, the degree to which

21-1 ¶¶ 4-8; 17-5; 17-6 at 9-15).  Although there is no evidence that anything specific blocked Plaintiff's view, the surveillance footage confirms that there were other pedestrians in the vicinity, and depicts five cars driving immediately next to the uneven asphalt less than three minutes before the accident. (Docket Nos. 17-1 ¶ 6; 17-4 at 34:13-35:9).  Moreover, Plaintiff's expert opined that "the area provides . . . motor vehicle access around the building and access to all parking areas;" that the disrepaired and unlevel state of the asphalt violated the 2015 International Property Maintenance Code of New York;[21] and that the combination of the above factors "created a[] . . . tripping hazard and contributed to" Plaintiff's "fall." (Docket No.17-6 at 7-8).  Consequently, a reasonable juror could find that despite the uneven asphalt's minimal height, Plaintiff did not notice it because she was focused on approaching her car safely without bumping into anyone or coming into contact with traffic.  Thus, even assuming that Defendants established that the uneven asphalt is trivial due to its minimal height, Plaintiff has raised sufficient issues of material fact regarding whether the uneven asphalt's location between the store entrance, parking spaces and roadway – which was exacerbated by the asphalt's uniform coloration – made it too difficult to detect. *See Hutchinson*, 19 N.Y.S.3d at 810; *Bolloli*, 896 N.Y.S.2d at 401–03; *Argenio*, 716 N.Y.S.2d at 659.  It is the jury's responsibility to evaluate whether the asphalt's characteristics and the location where Plaintiff fell rendered it defective. *See Hutchinson*, 19 N.Y.S.3d at 809–10.

---

the alleged defect was open and obvious presents an additional issue of material fact that must be decided by a jury. *See Habecker*, 928 F. Supp. 2d at 656.

[21] Although violation of a local building code is not dispositive, it can constitute "some evidence of negligence." *See Cornelisse v. United States*, No. 09 Civ. 5049(JCF), 2012 WL 933064, at *7 (S.D.N.Y. Mar. 20, 2012) (collecting cases).  Thus, Plaintiff's expert's contention that the parking lot violates the 2015 International Property Maintenance Code of New York creates additional issues of fact regarding whether the alleged defect is non-trivial. *See Van Auken v. Adamkiewicz*, No. 07-CV-1225(GLS/DRH), 2009 WL 1437586, at *3 (N.D.N.Y. May 19, 2009) (finding issue of fact as to whether stairwell was defective due to plaintiff's expert's testimony that stairwell violated building code).

**B.  Constructive Notice of a Dangerous Condition**

Because there is no evidence that Defendants created the condition, *see supra* n.14, Plaintiff must demonstrate either actual or constructive notice to establish her claim. *See Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 332 (E.D.N.Y. 1998).  Plaintiff argues that Defendants had constructive notice of the alleged defect because it was "structural . . . rather than transient," and the characteristics of the surrounding asphalt indicate that the area where Plaintiff fell had been "deteriorating" for a sufficient period of time for Defendants' employees to discover and remedy it. (Docket No. 22 at 12-14).  Defendants respond that this argument is "immaterial" because the alleged defect is trivial as a matter of law. (Docket No. 25 at 4). Having found that the alleged defect is *not* trivial as a matter of law, *see supra* Section III.A.2, the Court now evaluates whether there is an issue of material fact with respect to constructive notice.

"To prove liability based on constructive notice, the danger must have been 'visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it.'" *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) (summary order) (quoting *Lemonda v. Sutton*, 702 N.Y.S.2d 275, 276 (1st Dep't 2000)) (alteration in original); *see also Pinnock v. Kmart Corp.*, No. 04 Civ. 3160 (RMB), 2005 WL 3555433, at *3 (S.D.N.Y. Dec. 29 2005) ("Constructive notice can be shown by testimony that a condition is 'visible and apparent' and has existed 'for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it.'") (quoting *Heit v. Supermarkets Gen. Corp.*, 93 Civ. 6871 (JFK), 1995 U.S. Dist. LEXIS 13644, at *5 (S.D.N.Y. Sept. 20, 1995)).

**1. Visible and Apparent**

With respect to the first prong of constructive notice, Plaintiff argues that there are issues of fact regarding whether the unlevel asphalt was visible and apparent based on photographs of the accident area depicting "broken asphalt" with "a weed growing in it," as well as "a large volume of gravel, grit and dirt" that "cover[ed] and erode[d] the yellow paint stripes." (Docket No. 22 at 13).

Photographs depicting the size and structure of an alleged defect can create an issue of fact as to constructive notice if they "accurately depict an area in which a plaintiff fell." *See Zavaro v. Westbury Prop. Inv. Co.*, 664 N.Y.S.2d 611, 612 (2d Dep't 1997) (citing *Batton v. Elghanayan*, 403 N.Y.S.2d 717, 718 (1978)); *see also Bolloli*, 896 N.Y.S.2d at 403; *Farrar v. Teicholz*, 570 N.Y.S.2d 329, 331 (2d Dep't 1991). Here, Plaintiff testified that several photographs depicted the area of her fall on the day of the accident. (Docket No. 17-4 at 86:21-92:19); *see also supra* n.6. One such photograph depicts a square pothole with sharp corners and straight lines, which appear to span about half of the length of an SUV that was parked next to it when the surveillance footage was taken. (*Compare* Docket No. 17-5, *with* Docket No. 17-1 ¶¶ 4, 6; *see also* Docket No. 17-4 at 86:21-88:11). The width of the pothole spans even further than the painted yellow lines demarcating what Plaintiff's expert effectively described as a pedestrian zone. (Docket Nos. 17-5; 21-2 ¶ 8). The depressed portion of the asphalt is also visible in the surveillance footage, which appears to have been taken from several feet away, at the Wal-Mart Store entrance. (*See* Docket No. 17-1 ¶¶ 4, 6). According to Plaintiff and Mogg's testimony, the day of the accident was most likely the first time they both noticed this alleged defect, but they explained that they typically park on the "other side" of the Wal-Mart Store. (*See* Docket Nos. 17-4 at 81:15-84:22; 21-3 at 26:3-8).

Together, the above evidence creates an issue of material fact as to whether the unlevel asphalt was visible and apparent due to its large size and unusual features. *See, e.g.*, *Bolloli*, 896 N.Y.S.2d at 403 (finding triable issues of fact regarding constructive notice where "the photographs in the record show[ed] a noticeable pothole in the area where the plaintiff fell"); *Canaie v. G & G II Realty Properties, LLC*, No. 33983/2009, 2012 WL 1020966, at *4 (Sup. Ct. Queens Cnty. March 27, 2012) (denying summary judgment where "photographs . . . corroborated . . . testimony regarding the raised sidewalk flag"); *see also Davis*, 2019 WL 203108, at *2 ("[T]he Court disagrees that the government did not have constructive notice of [the alleged defect] for the same reasons stated above, namely the size and proximity of the crack to the post office entrance."); *Webb v. Audi*, 617 N.Y.S.2d 958, 959 (3d Dep't 1994) (finding issue of fact regarding constructive notice in light of "evidence . . . that loose gravel or concrete chips were visible and apparent").  It would not be unreasonable for a jury to conclude from these documented conditions that the asphalt was sufficiently visible and apparent to support a finding of constructive notice. *See Batton*, 403 N.Y.S.2d at 718.

## 2.  Length of Time

With respect to the second prong of constructive notice, Plaintiff argues that the weed, gravel, dirt, debris and eroded yellow paint in the above photograph all constitute evidence that the unlevel asphalt had been present for "at least a week." (*See* Docket No. 22 at 14).  Plaintiff further contends that this was a sufficient length of time for Defendants to discover and remedy the condition in light of the fact that it was in a high traffic pedestrian area a short distance away from the store entrance, where staff were "presumably" stationed. (*See id.*).

"[C]ourts in this district have consistently denied summary judgment where the plaintiffs observed the presence of the dangerous condition prior to falling or presented sufficient evidence 'supporting an inference of a long-standing condition.'" *Tavarez v. BJ's Wholesale Club, Inc.*, 16

Civ. 1780 (ER), 2018 WL 2089338, at *4 (S.D.N.Y. May 3, 2018) (quoting *Figueroa v. Pathmark Stores, Inc.*, No. 02 Civ. 4992(THK), 2004 WL 74261, at *3 (S.D.N.Y. Jan. 15, 2004)).  Such a long-standing condition may be evidenced by "chronically uncorrected" disrepair that would place a defendant on constructive notice that the subject structure "as a whole posed a danger[]" to passersby. *See Mendoza v. Highpoint Assocs., IX, LLC*, 919 N.Y.S.2d 129, 135–36 (1st Dep't 2011) (finding issue of material fact regarding constructive notice of water seepage in roof due to evidence that roof's surface "seemed unstable and . . . 'flimsy'" prior to the incident). A jury may also reasonably infer constructive notice "from the irregularity, width, depth and appearance of [a] defect . . . exhibited in . . . photographs, [such] that the condition had to have come into being over such a length of time that knowledge thereof should have been acquired by the defendant in the exercise of reasonable care." *Taylor v. New York City Transit Auth.*, 424 N.Y.S.2d 888, 889 (1979).

Here, the faded yellow paint traversing the pothole, as well as the visible deterioration of its sunken portions, could support a conclusion that the pothole existed for a sufficiently long period of time that would have allowed Defendants to discover and remedy it. *See id.*; (Docket No. 17-5).  The yellow lines appear to be painted on top of the sunken portion of the pothole – including the "corner" where Plaintiff fell – which Plaintiff's expert opined was cut with "large circular saws." (*See* Docket Nos. 17-4 at 86:22-87:15; 17-5; 21-2 ¶ 7).  A juror could therefore infer that the sunken portion of the pothole was present before the lines were painted, and for at least as long as it took for the paint to fade. *See Batton*, 403 N.Y.S.2d at 718 ("[I]t would not be unreasonable for a jury to infer from the condition of the defect, as indicated by the discoloration of the concrete-like substance shown in the photographs, that the hole in the basement floor had been there a sufficiently long time that the landlord should have known of the defect.").

The photograph also depicts loose pieces of "gravel, grit and dirt" as well as a green weed "of several inches growing out of the compromised asphalt" in the middle of the pothole. (*See* Docket No. 21-2 ¶ 7; *see also* Docket No. 17-5).  Plaintiff's expert opined that based on these characteristics, "the sinking of the asphalt had been in existence for, at least, weeks." (Docket No. 21-2 ¶ 7).  These additional factors could provide further support for a finding that the gradual deterioration of the asphalt in the middle of the pothole evidences a "long-standing condition" that Defendants could have fixed. *See Tavarez*, 2018 WL 2089338, at *4; *see also Overton v. Valvoline Instant Oil Change Franchising, Inc.*, 16 Civ. 6474 (PED), 2018 WL 11187113, at *4 (S.D.N.Y. June 18, 2018) (denying summary judgment due to evidence that defendants had sufficient time to remedy one to two foot long pothole that plaintiff claimed caused accident); *Lang v. Vandelay Realty LLC*, 14-3637, 2016 WL 3167480, at *3 (Sup. Ct. Ulster Cnty. June 3, 2016) (noting that "[t]he grass and weeds depicted in the submitted photographs . . . simply could not have just sprouted the morning of" the accident).  This is especially so in light of the fact that the pothole was situated at the edge of the parking lot, and thus, in a high traffic location within walking distance of the "presumably constantly staffed" store entrance. *See Figueroa*, 2004 WL 74261, at *4; *see also Davis*, 2019 WL 203108, at *2.  A jury is required to determine from this evidence how long the pothole existed, and whether that amount of time was sufficient for Defendants to both discover and remedy it. *See Shehata v. City of New York*, No. 40958/07, 2013 WL 5788711, at *4 (Sup. Ct. Kings Cnty. Sept. 30, 2015).  Accordingly, summary judgment is inappropriate.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied.  The

Clerk is respectfully requested to terminate the pending Motion (Docket No. 17).

Dated:    November 15, 2021
          White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge
